JOSEPH B. FORSYTH, PETITIONER-RESPONDENT AND CROSS-APPELLANT, v. TOWNSHIP OF LACEY, APPELLANT AND CROSS-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted October 31, 1978—Decided November 30, 1978.

Before Judges MATTHEWS and MILMED.

*Messrs. Russo* and *Courtney,* attorneys for appellant and cross-respondent Township of Lacey (*Mr. Leonard W. Roeber,* of counsel).

No brief was submitted on behalf of petitioner-respondent and cross-appellant.

The opinion of the court was delivered by

MILMED, J. A. D.  These are appeals and cross-appeals from judgments of the Division of Tax Appeals (Division) concerning local property assessments for the years 1974 and

1975 on lots 16, 17 and 24 in Block 520 and lot 4 in Block 630, comprising some 260 acres of vacant land in the Township of Lacey (township) in Ocean County.

Lot 4 in Block 630 was assessed by the township at $131,400 for 1974. On appeal the Ocean County Board of Taxation (county board) reduced the assessment to $98,550, at which figure the township assessed the lot for the year 1975.[1] The taxpayer's other parcel of vacant land, lots 16, 17 and 24 in Block 520, was assessed for each of the two tax years, 1974 and 1975, at $227,510. On appeal to the county board the assessment was reduced to $170,630.

The township appealed to the Division and the petitioner-taxpayer cross-appealed. At the hearing before the Division judge the expert for the taxpayer, a certified tax assessor, testified that the property was "95 percent swamp and wetlands," and that the remaining five percent "may be high ground." He said that in his opinion the "State Wetlands Act," *viz.*, The Wetlands Act of 1970, *L.* 1970, *c.* 272, *N. J. S. A.* 13 :9A–1 *et seq.*, rendered the property worthless. Nonetheless, suggesting that he was using the market data (comparable sales) approach to valuation, he estimated the value of the subject property to be $100 an acre, stating:

> The only basis I have to go on here is the fact that the meadowlands has been traditionally sold as either gunning, travel, trapping properties, fishing rights and the market over the years has started out way back when the Parkway went through when they were only paying $8 to $12 an acre for meadowland when they went through it.
>
> The gunners were willing to pay $50 to $100 an acre lately for good gunning ground, but it had to be good gunning ground before they would pay that money.

He also indicated that there may be a title problem in re-

---

[1] It appears that the appeal to the county board from the assessment for 1975 was dismissed without prejudice because of the then pending appeal to the Division from the 1974 county board determination.

gard to the land, *i. e.,* if it is established that it is tidal land, ownership would be in the State.

The basic sale upon which the expert for the taxpayer relied was one which was completed on September 24, 1976, some three months before the Division hearing, *i. e.,* the sale of 10.28 acres of bay front land adjoining the subject property to the south for $1,000. He said the property was "all wetlands" and "good gunning property." That sale was from Rutherford Stout and Hannah Stout, his wife, to Daniel R. Guss and Kathleen Guss, his wife. The property had been used by the Stout's Creek Gun Club of which Guss was a member. According to Stout, who testified at the Division hearing, the sale to Guss was a "sacrifice" sale. He explained:

> Sacrifice sale means you're hard up and can't keep your taxes up, or something like that; so, I qualified.
> Yes, it's a sacrifice due to the high tax bill.

The expert who testified on behalf of the township, the secretary of the township board of tax assessors and a certified tax assessor, stated his opinion, which was based in part on the findings of the chief surveyor for the townhip engineer from a U. S. Coast and Geodetic Survey map, that the subject property, except for some 43½ acres, was "subject to Wetlands." He noted that the property is zoned for "[r]esidential and marine commercial." Using the market data approach, he valued the land, based on its highest and best use, *i. e.,* for recreation (hunting, fishing and trapping), and without regard to any title problem, at $1,400 an acre without Wetlands and CAFRA (Coastal Area Facility Review Act, *L.* 1973, *c.* 185, *N. J. S. A.* 13:19–1 *et seq.*) restrictions, and $800 an acre with the then current Wetlands and CAFRA restrictions. At the latter figure the total value of the property amounted to $208,000. He found the Stout to Guss sale to be a nonusable sacrifice sale, "not a 'willing buyer-willing seller transaction.'"

The Division judge made no specific finding, clearly required in the circumstances, as to what part of the property was wetland and what part was high ground. Further, in stating that the municipal assessor had valued the land at "$800 per acre with the cloud on the title," he obviously erroneously assumed that the Wetlands and CAFRA restrictions represented a cloud on title and that, accordingly, the township had not submitted proof of value free of consideration of any cloud on title, as required by the applicable statute and decisional law. See *N. J. S. A.* 54:4–23; *Secaucus v. Damsil, Inc.,* 120 *N. J. Super.* 470 (App. Div. 1972), certif. den. 62 *N. J.* 90 (1972). Additionally, he was clearly in error in considering the Stout property, which was sold in September 1976, to be "part of the premises in question." Using the Stout sale as "[t]he most solid sale," he arrived at a value of $175 an acre for a total of $28,350 for lots 16, 17 and 24 in Block 520 and $17,150 for lot 4 in Block 630, for each of the tax years. He reasoned:

The best sale for comparative purposes was part of the premises in question which sold for $100 per acre. The $175 per acre is in line with the ratio used in the tax assessors testimony of $1,400 per acre true value vs $800 per acre with the clouded title. It equals proportionately $175 true value vs $100, the sale price with the clouded title.

In using the Stout sale as "[t]he best sale for comparative purposes," he ignored completely, without reason or justification, the testimony of the expert for the municipality that this was a sacrifice sale and, as such, unusable in arriving at the true value of the subject property. He also ignored, without reason or justification, the testimony of Stout indicating his agreement that the sale to Guss was a "sacrifice" sale. His final determination, grounded as it is in erroneous assumptions and not based on specific findings and conclusions supported by the proofs, cannot stand.

Accordingly, we reverse the judgments of the Division of Tax Appeals under review and remand the matter to the Division for further proceedings consistent with this opinion. We do not retain jurisdiction.